UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSE ADRIAN GUEVARA                                    CIVIL ACTION

VERSUS                                                 NO. 17-10625

JNV GLASS INSTALLATION AND REPAIR                      SECTION A(3)
LLC, et al.


<u>**ORDER AND REASONS**</u>

Before the Court is a **Motion for Conditional Class Certification, Judicial Notice, and For Disclosure of the Names and Addresses of the Potential Opt-In Plaintiffs (Rec. Doc. 21)** filed by Plaintiff Jose Adrian Guevara ("Guevara").  Defendant Zinsel Glass and Mirror, LLC ("Zinsel") opposes the motion (Rec. Doc. 22) and Plaintiff has replied.  (Rec. Doc. 25).  The motion, set for submission on June 13, 2018, is before the Court on the briefs without oral argument.  Having considered the motion and memoranda of counsel, the record, and the applicable law, the Court finds that Plaintiff's **Motion for Conditional Class Certification, Judicial Notice, and For Disclosure of the Names and Addresses of the Potential Opt-In Plaintiffs (Rec. Doc. 21)** is **GRANTED** for the reasons set forth below.

I.      **Background**

Plaintiff Jose Adrian Guevara brings this putative class action suit on behalf of himself, and other persons similarly situated, against Defendants JNV Glass Installation and Repair LLC ("JNV"), Rudy Vasquez ("Vasquez"), and Zinsel Glass and Mirror, LLC (collectively referred to as "Defendants").  Plaintiff's Amended Complaint alleges that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, by failing to compensate Plaintiff—and those employees similarly situated—with overtime pay for all hours worked in excess of forty hours in

a workweek.  (Rec. Doc. 4, p. 1, ¶ 1).  Plaintiff seeks to recover unpaid wages, interest, liquidated

damages, and attorneys' fees and costs on behalf of himself and other similarly situated employees

who worked for Defendants during the past three years.  *Id.* at pp. 1–2, ¶ 2.

According to the Amended Complaint, JNV is a commercial subcontractor that specializes

in providing labor for the installation and repair of glass.  JNV provides labor for commercial

construction projects in the Greater New Orleans area.  (Rec. Doc. 4, p. 3, ¶ 12).  Zinsel is a glass

company that specializes in installing and repairing glass for residential and commercial projects.

Zinsel engages JNV to provide labor for its commercial construction projects in the Greater New

Orleans area.  (Rec. Doc. 4, p. 3, ¶ 19).  Defendants jointly employed at least forty manual laborers

at their jobsites.  *Id.* at p. 4, ¶ 29.

According to his declaration, Plaintiff was hired by JNV in April of 2014 to provide manual

labor at Zinsel jobsites.  He stopped working for JNV in September of 2016.  His job duties

included installing glass windows and doors among other related duties.  When Plaintiff reported

for the job each day, he and his co-workers were supervised by Zinsel supervisors.  The supervisors

kept track of Plaintiff's hours and his fellow employees' hours on a sign in-and-out sheet.  Towards

the end of Plaintiff's employment, Zinsel would also take pictures of all the laborers at the jobsite

every morning and every afternoon to keep track of hours.  Plaintiff and his co-workers worked

the same schedule and took breaks at the same time.  He often worked over forty hours per week,

and regardless of the number of hours worked, he was still only paid his regular hourly rate until

approximately August 2016.  (Rec. Doc. 21-2, p. 1).

For his first year of employment, Plaintiff was paid $14.00 per hour.  After approximately

one year, his rate of pay was raised to $15.00 per hour.  His last rate of pay was $16.00 per hour.

Until approximately August 2016, Plaintiff alleges that he had only been paid his regular rate of

2

pay for all hours worked in a work week.  However, he often worked more than forty hours per week, and on average, worked between fifty and fifty-five hours per week.  Defendants often required Plaintiff to work at least six days a week.  *Id.* at pp. 1–2, 5.

Plaintiff alleges that Defendants willfully violated the overtime provisions of the FLSA, 29 U.S.C. § 207(a) by not paying Plaintiff and other similarly situated employees one-and-a-half times their regular rate for all hours worked in excess of forty hours in a workweek from at least October 2014 and continuing until the present.  *Id.* at p. 6, ¶ 39.  The instant motions asks this Court to (1) conditionally certify Plaintiff's proposed class, allowing this action to proceed collectively, (2) order that Defendants disclose the names and last known addresses of the potential opt-in Plaintiffs, (3) approve the sending of the class notice to the potential opt-in Plaintiffs, and (4) approve an opt-in period of 90 days.  (Rec. Doc. 21-1, p. 5–6).

## II.  Legal Standard

The FLSA creates a cause of action for employees against employers who violate the Act's requirements.  The FLSA provides in pertinent part:

> An action . . . may be maintained against any employer . . . by any one or more employees for and [o]n behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b) (West 1998 & Supp. 2015).

Thus, § 216(b) establishes an "opt-in" scheme under which plaintiffs must affirmatively notify the court of their intention to become parties to the suit.  The Act does not provide a definition for "similarly situated."

Courts recognize two methods to infer collectivity and, therefore, whether to authorize notice to similarly-situated employees advising them of their right to join an FLSA collective

action.  *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–15 (5th Cir. 1995).  These methods are

the two-step *Lusardi* approach and the class action *Shushan* approach.  *Id.*; *Shushan v. Univ. of*

*Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990); *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.

N.J. 1987).  The Fifth Circuit has found it unnecessary to determine which method is most

appropriate.  *Mooney*, 54 F.3d at 1213–15.  However, "[i]t is clear that the two-step ad hoc

[*Lusardi*] approach is the preferred method for making the similarly situated analysis and that the

similarly situated standard does not incorporate Rule 23 requirements."  *Basco v. Wal-Mart Stores*

*Inc.*, 2004 WL 1497709, *4 (E.D. La. 2004); *See also LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d

286, 288 (5th Cir. 1975) (finding a fundamental difference between Rule 23 class actions and

FLSA collective actions and noting that it is crystal clear that § 216(b) precludes pure Rule 23

class actions in FLSA suits).  The *Lusardi* approach is the more generally accepted method of

analysis and has been routinely applied by courts in this Circuit.  *Xavier v. Belfor USA Group,*

*Inc.*, 585 F.Supp.2d 873, 876 (E.D. La. Sept. 23, 2008).

　　　　This district court will typically apply the *Lusardi* two-step analysis when exercising its

discretion with respect to certification.  *Wellman v. Grand Isle Shipyard, Inc.*, No. 14-831, 2014

WL 5810529, at *1, *3 (E.D. La. Nov. 7, 2014) (Africk, J.).  First, the court determines whether

the putative plaintiffs' claims are sufficiently similar to merit sending notice of the action to

possible members of the collective class.  *Acevedo v. Allsups Convenience Stores, Inc.*, 600 F.3d

516, 519 (5th Cir. 2010) (citing *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987); *Mooney v.*

*Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995)).  If the claims are similar enough, the

court will authorize counsel to put all potential members of the class on notice so that they may

join the suit if they wish to do so.  *Id.*  This stage is referred to as a "conditional certification" or

"notice stage."  Second, after discovery is complete and the allegations and claims are more fully

fleshed out, the court will make a final determination as to certification, typically in the posture of a motion by defendant to decertify the action. *Id.*; *Wellman*, 2014 WL 5810529, at *2. This stage is referred to as "decertification."

At step one, the conditional class certification stage, the court's decision is usually based only on the pleadings and any affidavits that have been submitted. *Wellman*, 2014 WL 5810529, at *1. Because the Court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class. *Id.* This lenient standard requires nothing more than substantial allegations that potential members "were together the victims of a single decision, policy, or plan." *Id.* (quoting *Mooney*, 54 F.3d at 1214 n. 8).

## III.    Law and Analysis

The contention surrounding this motion stems from the parties' disagreement over how to define the class. Plaintiff asks the Court to conditionally certify a class of Defendants' employees, limited to:

> All individuals who worked or are working performing manual labor for JNV Glass Installation and Repair LLC and/or Zinsel Glass and Mirror, LLC during the previous three years, and who are eligible for overtime pay pursuant to the FLSA, 29 U.S.C. § 207 and who did not receive full overtime compensation.

(Rec. Doc. 21-1, p. 5).

In opposition, Defendant Zinsel notes that prior to Plaintiff filing the instant motion, Plaintiff and Zinsel tentatively agreed to a stipulated motion regarding conditional class certification that proposed the following class definition:

> All individuals who worked or are working providing labor for JNV Glass Installation and Repair at Zinsel Glass and Mirror, LLC projects from October 2014 to the present.

(Rec. Doc. 22, p. 2). Zinsel argues that the former class definition, proposed by Plaintiff in the instant motion, broadens the proposed class to include anyone who performed manual labor for

JNV within the past three years who was eligible for overtime pay and did not receive overtime compensation, as well as anyone who performed manual labor for Zinsel in the past three years who was eligible for overtime pay and did not receive overtime compensation. [1] *Id.* Moreover, Zinsel notes that there are no allegations in the Amended Complaint or the instant motion that Zinsel and JNV are related. Zinsel contends that such a result makes Plaintiff's proposed class definition overly broad, and that the class should be limited only to those individuals who worked for JNV at Zinsel worksites from October 2014 to the present.

Another section of the Eastern District addressed a similar dispute in *Lima v. International Catastrophe, Inc.,* 493 F.Supp.2d 793 (E.D. La. 2007) (Fallon, J.). In that case, workers brought a putative class action against employers, alleging violations of the overtime wage provisions of the FLSA. The plaintiffs were recruited and hired by a subcontractor—CLS.[2] The two general contractor defendants, PJ Services and ICS, utilized CLS to provide manual labor in the clean-up and restoration of various businesses along the Gulf Coast following Hurricane Katrina. Plaintiffs alleged that they remained joint employees at all relevant times of ICS and/or PJ Services and the subcontractor—CLS. *Id.* at 796.

At the "notice stage," ICS—general contractor defendant—objected to the scope of the class that the plaintiffs asked the Court to certify. In their proposed class definition, plaintiffs sought to include potential opt-in plaintiffs who were employees of subcontractors and other

---

[1] Zinsel notes:

> Unless JNV has only performed work for Zinsel in the past three years, and Zinsel has no manual laborers of its own, this is a much larger class than originally proposed and will likely include class members who contend they are owed payment for work that was not performed on projects where JNV provided labor at Zinsel's jobsites, and may include laborers who never performed work on any projects involving Zinsel. Also the proposed class is broad enough to include employees of Zinsel who never worked for JNV.

(Rec. Doc. 22, pp. 2–3).

[2] Similar to the case at bar, the plaintiffs in *Lima* were predominantly immigrants who provided manual labor services. *Lima,* 493 F.Supp.2d at 796.

entities besides CLS.  ICS contended that while workers hired by CLS may have been similarly or identically situated, the plaintiffs had presented no evidence that workers hired by other subcontractors were similarly situated and were subjected to similar illegal pay schemes. Defendant ICS noted that the affidavits submitted by the plaintiffs were only those of persons who were recruited by CLS and only performed services under the subcontract between ICS and CLS. *Id.* at 799.

In reply, the plaintiffs argued that it would be reasonable to assume that ICS enters into similar contracts with other subcontractors and would similarly negotiate similar allegedly illegal pay schemes.  If true, the defendants would have records of all hours, including overtime, worked by potential class members, regardless of the subcontractor.  The Court found plaintiffs' arguments convincing.

In ruling that plaintiffs' proposed class was not overly broad at the "notice stage," Judge Fallon provided the following sound reasoning that applies to the dispute before the Court today:

> It is true that the Plaintiffs present no affidavits of workers employed by other subcontractors besides C.L.S., but a review of the Defendants' pay records and agreements to subcontract will easily reveal whether a common plan existed to improperly pay overtime salaries.  It seems appropriate to certify the collective action at this time and revisit the question later after some discovery.  If the allegations regarding the C.L.S. and ICS contract prove to be true, it would be reasonable . . . to conclude that ICS may also have engaged in these same practices with other subcontractors.  It is unlikely that the other subcontractors' workers received a different rate of pay or did substantially different work.  If sufficient evidence is not developed to demonstrate that the other subcontractors were not involved in the same alleged scheme or practice, the Court may decertify the collective action as to those parties after sufficient discovery is conducted.  See [*Kaluom v. Stolt Offshore, Inc.*, 474 F.Supp.2d 866, 875 (S.D. Tex. 2007)] (rejecting contention that notice should be limited to workers of one company and stating that defendant could move for decertification after discovery had been conducted showing results different for employees of other companies). Accordingly, given the lenient standard at the notice stage, the Court is satisfied that the Plaintiffs and other individuals whom they seek to include within the class, including those who worked for other subcontractors, are "similarly situated" with

respect to the Defendants' pay provisions so as to justify conditional certification and notice to potential class members.

*Lima*, 493 F.Supp.2d at 799–800.

The same reasoning applies to this case.  Plaintiff has provided the Court with no other affidavits or declarations besides his own.  However, in his declaration, Plaintiff alleges, "I worked alongside other laborers like myself.  JNV Glass and Zinsel employed several other manual laborers ("coworkers") at each jobsite.  We all performed the same basics tasks and were supervised by Zinsel employees."  (Rec. Doc. 21-2, p. 1).  Plaintiff additionally provides the Court with JNV invoices that appear to evidence other JNV employees being paid at similar rates as Plaintiff without the FLSA required overtime compensation.  (Rec. Docs. 21-3, 21-4, 21-5, 21-6, 21-7, 21-8, 21-9, 21-10).  Although paid with a JNV check, Plaintiff urges that during his time working on Zinsel jobsites, he and several other manual laborers performed the same basic tasks and were supervised by Zinsel employees.

The Court finds it necessary to allow discovery based on Plaintiff's broader proposed class definition.  If the alleged illegal pay scheme does exist, discovery based on Plaintiff's proposed class definition will uncover the extent and depth of such a scheme—*i.e.*, whether Zinsel engaged in any violations of the FLSA or whether the alleged violations were confined to JNV.[3] While the Court recognizes Zinsel's concerns, the Court again notes the lenient standard applied at this "notice stage."  At the "notice stage, 'courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination."  *Mooney*, 54 F.3d at 1214 n. 8 (citing *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)).

---

[3] The Court notes, however, that it makes no determination at this time regarding the merits of the claims.

8

The Court finds that at this stage conditional certification is appropriate.  Defendants may later file a motion for decertification after a more extensive discovery process has been conducted, if it is determined at that stage that Plaintiff has failed to carry his burden of establishing that he and members of the proposed class are similarly situated.

The class is conditionally certified as follows:

> All individuals who worked or are working performing manual labor for JNV Glass Installation and Repair LLC and/or Zinsel Glass and Mirror, LLC during the previous three years, and who are eligible for overtime pay pursuant to the FLSA, 29 U.S.C. § 207 and who did not receive full overtime compensation.

(Rec. Doc. 21-1, p. 5).

In accordance with the above, the Court orders that all named Defendants produce the following information within the next thirty (30) days to Plaintiff's counsel:

> A complete list of the names, current addresses, dates of employment, and dates of termination of all workers employed by Defendants within the previous three years who fall within the above class definition.

"The Court emphasizes that the record is incomplete, so this Court cannot make a definitive determination as to whether the putative class members are similarly situated."  *Vogt v. Tex. Instruments, Inc.*, 2006 WL 4660134, at *3 (N.D. Tex. Sept. 19, 2006).  After initial discovery has been conducted and the potential opt-in plaintiffs file their notices of consent, the Court will consider any motion filed by the Defendants to decertify the class.

Finally, the Court finds that a ninety day opt-in period is appropriate and reasonable. Plaintiff notes that many of the potential opt-in plaintiffs are non-English speaking laborers who often cannot be contacted through traditional avenues.  A ninety day opt-in period affords the Plaintiff the time needed to locate potential opt-in plaintiffs, but is not so unreasonable as to be overly burdensome or excessive for the Defendants.  Accordingly, proposed plaintiffs have ninety days to opt-in to the collective action by filing the proposed "Plaintiff Consent Form" attached to

Plaintiff's instant motion.[4]   The ninety day opt-in period will begin to run on the date the Defendants provide a complete list of the names, addresses, dates of employment, and dates of termination of potential class members.

Accordingly;

IT IS ORDERED that **Plaintiff's Motion for Conditional Class Certification, Judicial Notice, and For Disclosure of the Names and Addresses of the Potential Opt-In Plaintiffs (Rec. Doc. 21)** is **GRANTED**, and that the above-captioned matter is conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b);

IT IS FURTHER ORDERED that the class of potential opt-in plaintiffs entitled to notice is defined as "All individuals who worked or are working performing manual labor for JNV Glass Installation and Repair LLC and/or Zinsel Glass and Mirror, LLC during the previous three years, and who are eligible for overtime pay pursuant to the FLSA, 29 U.S.C. § 207 and who did not receive full overtime compensation;"

IT IS FURTHER ORDERED that Defendants shall have thirty (30) days from the entry of this Order to produce a complete list of the names, current addresses, dates of employment, and dates of termination of all workers employed by Defendants within the previous three years who fall within the class definition; and

IT IS FURTHER ORDERED that the time period within which the potential opt-in plaintiffs may opt-in is ninety (90) days.  The ninety (90) day opt-in period will begin to run on the date that Defendants provide a complete list of the names, current addresses, dates of

---

[4] The Court notes that Plaintiff has presented an English version of the "Plaintiff Consent Form" as well as a Spanish version of the "Plaintiff Consent Form."  Opt-in Plaintiffs shall file the English version, as long as the parties can agree that the Spanish version is an accurate translation of the English version.

employment, and dates of termination of all workers employed by Defendants within the previous three years who fall within the class definition.

August 6, 2018

JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

11